**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Marnie Bryan,<br><br>　　　　Plaintiff,<br><br>v.<br><br>County of Maricopa, et al.,<br><br>　　　　Defendants. | No. CV-21-01410-PHX-SRB<br><br>**ORDER** |

The Court now considers Defendants Maricopa County (the "County") and Paul Penzone's ("Sheriff Penzone") (collectively, "Defendants") Motion to Dismiss ("Motion"). (Doc. 4, ("MTD").) For the following reasons, the Court grants the Motion in part with leave to amend.

**I.　BACKGROUND**

This case concerns the actions of Detective Gary Kaplan ("Detective Kaplan"), a Maricopa County Sheriff's Office ("MCSO") Detective.[1] (*See* Doc. 1-3, Compl. ¶¶ 13–95.)

**　　A.　Factual Background**

Plaintiff Marnie Bryan ("Plaintiff") alleges that she contacted the MCSO on July 18, 2020 after her boyfriend, William, "became verbally and physically abusive to" her and threatened her life with a pistol the previous evening. (*Id.* ¶¶ 13–19.) An MCSO deputy immediately responded to her home, began a report, and asked her to go the MCSO's

---

[1] Detective Kaplan, a named Defendant in this case, does not join the present Motion.

location in Mesa, Arizona on July 20, 2021 to meet with Detective Kaplan for an interview, which Plaintiff did. (*Id.* ¶¶ 19–23.) Following the interview, Plaintiff claims that Detective Kaplan used his position as the detective on her case to sexually assault her in her own home on July 21, 2021. (*Id.* ¶¶ 24–57.) Although she was "terrified after what happened," Plaintiff continued to exchange text messages with Detective Kaplan after the assault because she feared that he would not continue his investigation into William if she did not respond. (*Id.* ¶¶ 62–63.)

During the first week of August 2021, William broke into Plaintiff's house, accessed her phone, and found text messages between Plaintiff and Detective Kaplan. (*Id.* ¶¶ 64–65.) "William told Plaintiff that the charges against him needed to be dropped or he planned on calling the MCSO to report Detective Kaplan's personal relationship and the obvious conflict of interest." (*Id.* ¶ 66.) Plaintiff called Detective Kaplan and told him what had transpired. (*Id.* ¶ 67.) Detective Kaplan, in full uniform, immediately drove to her home in his MCSO vehicle, examined her phone, deleted certain text messages, and sexually assaulted her once again. (*Id.* ¶¶ 68–70.) The Maricopa County Attorney's Office determined it would not press charges against William one or two days later. (*Id.* ¶ 72.)

On or about September 17, 2020, in order to "get even" with Detective Kaplan, William contacted the MCSO and reported Detective Kaplan's relationship with Plaintiff, and the MCSO's Professional Standards Bureau ("PSB") began an investigation into Detective Kaplan's conduct. (*Id.* ¶¶ 75–76.) Detectives with the PSB interviewed Plaintiff on October 2, 2020 and told her "that Detective Kaplan had sexually assaulted victims of other violent crimes and assured her that Plaintiff was not alone." (*Id.* ¶¶ 78–79.) After learning that Detective Kaplan had apparently done this to others, Plaintiff agreed to assist the PSB in its investigation by calling Detective Kaplan on his MCSO-issued cell phone. (*Id.* ¶¶ 84–85.) During the recorded conversation, Detective Kaplan admitted to having sex with Plaintiff, which he then repeated to investigators in an interview. (*Id.* ¶¶ 86–88.) Detective Kaplan was subsequently "arrested and charged with two counts of violating A.R.S. § 13-1412 – Unlawful Sexual Conduct; Peace Officer," but those charges were

ultimately dropped by the Maricopa County Attorney's Office. (*Id.* ¶¶ 89–90.)

### B. Procedural Background

On July 19, 2021, Plaintiff filed her Complaint in Maricopa County Superior Court bringing five causes of action.[2] (*See* Compl.) Against Defendant Kaplan, Plaintiff brings a 42 U.S.C. § 1983 claim for violation of her Fourteenth Amendment right to bodily integrity ("Count 1"), and state law claims for intentional infliction of emotional distress ("Count 3") and battery ("Count 5").[3] (*Id.* ¶¶ 96–107, 121–24, 132–34.) Against the County and Sheriff Penzone, in his official capacity, Plaintiff asserts a *Monell* claim under § 1983 ("Count 2"), alleging that the County and Sheriff Penzone "adopted, promulgated, and approved written and unwritten policies, procedures and customs that violate the Fourteenth Amendment . . . because these policies, procedures, and customs are deliberately indifferent to Plaintiff's right to bodily security." (*Id.* ¶¶ 108–20.) And against the County alone, Plaintiff brings a claim for negligent training, supervision, and retention ("Count 4") under Arizona law. (*Id.* ¶¶ 125–131.) Plaintiff seeks compensatory damages on all Counts, and seeks punitive damages, attorneys' fees, and costs on her federal claims. (*Id.* ¶¶ 107, 120, 124, 131, 134.)

On August 23, 2021, Defendants Maricopa County and Paul Penzone filed the instant Motion seeking to dismiss the claims against them because: (1) the County cannot be held liable under a theory of *respondeat superior* for the actions of the Sheriff or his deputies; (2) Plaintiff's allegations lack the specificity required to state a *Monell* claim; and (3) Plaintiff is not entitled to punitive damages under Arizona law. (*See* MTD at 1–2.) Plaintiff filed her Response to the Motion on November 2, 2021, to which Defendants filed their Reply in Support of the Motion on November 9, 2021. (Doc. 22, Resp. to MTD ("Resp."); Doc. 23, Defs.' Reply in Supp't of MTD ("Reply").)

## II. LEGAL STANDARD

---

[2] Defendants removed the case to this Court on August 16, 2021. (*See* Doc. 1, Not. of Removal.)
[3] In her Complaint, Plaintiff claims that "[f]or the purposes of Plaintiff's state law claims, Defendants Maricopa County and MCSO are liable for the acts and omissions of Defendant Gary Kaplan under the theory of *respondeat superior*." (Compl. ¶ 9.)

- 3 -

### A. Motion to Dismiss

A Rule 12(b)(6) dismissal for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). In determining whether an asserted claim can be sustained, "[a]ll of the facts alleged in the complaint are presumed true, and the pleadings are construed in the light most favorable to the nonmoving party." *Bates v. Mortg. Elec. Registration Sys., Inc.*, 694 F.3d 1076, 1080 (9th Cir. 2012). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). At this early stage of the litigation, the standard does not mandate that "plaintiff's explanation . . . be true or even probable." *Starr v. Baca*, 652 F.3d 1202, 1216–17 (9th Cir. 2011). However, "for a complaint to survive a motion to dismiss, the nonconclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In other words, the complaint must contain enough factual content "to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556.

### B. Leave to Amend

When a plaintiff requests leave to amend the complaint, Federal Rule of Civil Procedure Rule 15(a) provides that leave should be "freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). This policy is "to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeson, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Generally, leave to amend should be freely granted unless there is an apparent reason for denying this opportunity, such as "bad faith, undue delay, prejudice to the opposing party, and/or futility." *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010). The party opposing amendment bears the burden of showing prejudice, futility, or one of the other permissible reasons for denying a motion to amend. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

Absent prejudice, or a strong showing of any of the remaining factors, there is a presumption in favor of granting leave to amend. *Eminence*, 316 F.3d at 1052. Amendment is futile if "no amendment would allow the complaint to withstand dismissal as a matter of law." *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 815 (9th Cir. 2020). In determining whether a proposed amendment is futile, courts are guided by the same standards used when evaluating the sufficiency of a pleading challenged in a Rule 12(b)(6) motion to dismiss. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).

### III. ANALYSIS

The Court first notes that it is not clear from the face of the Complaint which parties Plaintiff seeks to hold liable on each of her claims. For example, although paragraph nine of the Complaint states that for Plaintiff's state law claims "Defendants Maricopa County and MCSO are liable for the acts and omissions of Defendant Gary Kaplan under the theory of *respondeat superior*[,]" neither the County nor the MCSO are mentioned in the state law causes of action against Defendant Kaplan and the MCSO is not a named Defendant in this case.[4] (*See* Compl. ¶¶ 121–24, 132–34.) Further, Count 4 of the Complaint, purporting to present state law claims for "negligent training, supervision, and retention,"[5] names the County as the sole defendant and presents direct theories of liability, not the *respondeat superior* liability alleged in paragraph nine of the Complaint. (*Id.* ¶¶ 125–131.); *see Debruyn v. Hernandez*, No. CV-17-01424-PHX-DJH, 2019 WL 2359247, at *4 n.6 (D. Ariz. June 4, 2019) ("Negligent hiring, retention, and training are properly characterized as direct theories of liability[.]"). As best as the Court can tell, Plaintiff seeks to hold the County liable under Counts 2, 3, 4, and 5, and seeks to hold Sheriff Penzone liable under

---

[4] The MCSO has been held to be a non-jural entity under Arizona law by both state and federal courts. *See Braillard v. Maricopa Cnty.*, 232 P.3d 1263, 1270 (Ariz. Ct. App. 2010); *Melendres v. Arpaio*, 784 F.3d 1254, 1260 (9th Cir. 2015); *United States v. Maricopa Cnty.*, 915 F. Supp. 2d 1073, 1077 (D. Ariz. 2012).

[5] While a failure to train and supervise may be a basis for a federal *Monell* claim, such failures must rise above "mere negligence" to that of "deliberate indifference" in order to form the basis of the claim. *See Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). Nothing in Count 4 suggests it is meant to state a *Monell* claim based on Maricopa County's failure to train or failure to supervise. (*See* Compl. ¶¶ 125–131.)

Count 2 only. (*See* Compl. ¶¶ 108–134.) Construing the Complaint as alleging such liability, the Court turns to Defendants' arguments for dismissal.

### A. *Respondeat Superior* Claims Against Maricopa County

Defendants first argue that the County cannot be liable for the allegedly tortious acts of the Sheriff or his deputies under the doctrine of *respondeat superior* and request the County be dismissed from this lawsuit because "this is the only claim made against the County[.]" (MTD at 3–5; Reply at 2.) Plaintiff responds that "[e]ven if Maricopa County is not a proper defendant for Plaintiff's state law claims, Sheriff Penzone, in his official capacity, is liable under the theory of *respondeat superior* for the actions of his deputy and staff." (Resp. at 7.) As a result, Plaintiff states that she "would consent to the dismissal of Maricopa County as a party" and requests leave to amend the Complaint "to allege that Sheriff Penzone is liable for the actions of his deputies and staff." (*Id.*) Defendants do not oppose this request in their Reply. (*See* Reply at 2, 7–8.)

Under Arizona law, the doctrine of *respondeat superior* provides that "an employer is vicariously liable for 'the negligent work-related actions of its employees.'" *Kopp v. Physician Grp. of Ariz.*, 421 P.3d 149, 151 (Ariz. 2018) (quoting *Engler v. Gulf Interstate Eng'g, Inc.*, 380 P.3d 599, 601 (Ariz. 2012)). Liability is based solely on the employer-employee relationship, and an employee "must be (1) subject to the employer's control or right of control, and (2) acting in furtherance of the employer's business" in order for liability to attach to the employer. *Engler v. Gulf Insterstate Eng'g, Inc.*, 258 P.3d 304, 309 (Ariz. Ct. App. 2011). However, the County, "having no right of control over the Sheriff or his deputies . . . is not liable under the doctrine of [*respondeat superior*] for the Sheriff's torts" taken in furtherance of his statutory duties. *Fridena v. Maricopa Cnty.*, 504 P.2d 58, 61 (Ariz. Ct. App. 1972); *see also Sarkis v. Maricopa Cnty.*, No. 1 CA-CV 20-0271, 2021 WL 1991857, at *2 (Ariz. Ct. App. May 18, 2021) ("[T]he County cannot be held vicariously liable for the actions MCSO carries out in furtherance of its statutory duties."). Judges in this district have generally agreed that Arizona counties are not vicariously liable for the tortious conduct of their Sheriffs or their deputies. *See, e.g.*, *Norton v. Arpaio*, No.

CV-15-00087, 2015 WL 13759956, at *6 (D. Ariz. Nov. 20, 2015) (collecting cases).

In light of the parties' agreement, and the above-cited Arizona caselaw, the Court agrees that any Counts in the Complaint against the County that are based on *respondeat superior* liability should be dismissed, and Plaintiff is given leave to amend the Complaint to allege such liability against Sheriff Penzone. *See Fridena*, 504 P.2d at 61. But, contrary to Defendants' assertion, only Counts 3 and 5 rely on *respondeat superior* liability against the County. (*See* MTD at 5.) First, as noted above, in Count 4 Plaintiff alleges direct theories of liability against the County for "negligent training, supervision, and retention" under Arizona law. (*See* Compl. ¶¶ 125–131); *Debruyn*, 2019 WL 2359247 at *4 n.6. Second, Plaintiff's *Monell* claim in Count 2 is, by its nature, not based on *respondeat superior* liability. *See Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 691 (1978) ("[W]e conclude that . . . a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."); *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). Defendants have therefore provided this Court no reason why the County should be dismissed as to those claims.[6]

The Court concludes that Counts 3 and 5 should be dismissed against the County because they rely on a theory of *respondeat superior*. However, leave to amend is granted for Plaintiff to allege liability against Sheriff Penzone on her state law claims.

**B.**     ***Monell* Claim Against Maricopa County and Sheriff Penzone**

Defendants next argue that Plaintiff failed to adequately plead her federal *Monell* claim because "Plaintiff's allegations do not identify with any modicum of specificity what policies are at issue." (MTD at 6.) Again, a local government cannot be sued under § 1983 using a theory of vicarious liability. *Monell*, 436 U.S. at 691. Rather, a municipality can only be held liable for its employees' actions if the municipality itself causes the constitutional violation through a custom, practice, or policy created by the municipality. *Id.* at 690–91; *City of Canton v. Harris*, 439 U.S. 378, 385 (1989). In order to establish municipal liability under *Monell*, "a plaintiff must prove '(1) that [the plaintiff] possessed

---

[6] The Court expresses no opinion on the viability of a negligent training, supervision, and retention claim or a *Monell* claim against the County in this case.

a constitutional right of which [s]he was deprived, (2) that the municipality had a policy, (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right, and (4) that the policy is the moving force behind the constitutional violation.'" *Dougherty*, 654 F.3d at 900 (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)) (alterations in original).

A plaintiff can generally establish a policy underlying a *Monell* claim by showing: (1) "a longstanding practice or custom which constitutes the standard operating procedure of the local government entity"; (2) "the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision"; or (3) "an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 964 (9th Cir. 2002) (citing *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 984–85 (9th Cir. 2002) (internal quotation marks and citations omitted). If basing a *Monell* claim on a "longstanding practice or custom," a plaintiff cannot rely "on isolated or sporadic events," but rather must demonstrate that the custom is "founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). "A municipality may also be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights." *Hauser v. Smith*, No. CV 20-08138-PCT-JAT (JFM), 2021 WL 2262551, at *7 (D. Ariz. June 3, 2021) (citing *Harris*, 489 U.S. at 388).

In her Complaint, Plaintiff alleges that "Sheriff Penzone and Maricopa County have adopted, promulgated, and approved written and unwritten policies, procedures, and customs that violate the Fourteenth Amendment [of] the United States Constitution because these policies, procedures, and customs are deliberately indifferent to Plaintiff's right to bodily security." (Compl. ¶ 110.) She further contends that "unwritten policies" exist whereby the County and Sheriff Penzone ignore instances where their employees use their positions "to harass, make advances on, and/or sexually assault victims of serious and

violent crimes." (*Id.* ¶ 111.) To support these conclusory allegations, Plaintiff relies on her own experience, passing references to "well-publicized instances in the past where MCSO detectives had sexual relationships with victims of serious or violent crimes," and comments made to Plaintiff by PSB detectives that "Detective Kaplan had sexually assaulted victims of other violent crimes[.]" (*Id.* ¶¶ 79, 93, 112.)

The Court finds that Plaintiff's Complaint lacks sufficient facts to plausibly state a claim for relief under *Monell*. Plaintiff mistakenly asserts that she need do nothing more than provide a "bare allegation" of municipal liability to survive dismissal. (Resp. at 8 (citing *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002)).) But Plaintiff relies on outdated caselaw that precedes the Ninth Circuit's recognition that *Monell* claims must meet the heightened federal pleading requirements first outlined in the Supreme Court's decisions in *Iqbal* and *Twombly*. *See A.E. ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012); *Stuart v. City of Scottsdale*, No. CV-20-00755-PHX-JAT, 2020 WL 4446506, at *9 (D. Ariz. Aug. 3, 2020) ("Following *A.E.* and *Starr [v. Baca]*, district courts have accordingly required plaintiffs to specify the content of the policies, customs or practices the execution of which gave rise to [the] Constitutional injuries.") (citation and internal quotation marks omitted). Plaintiff's Complaint falls short of meeting this standard because it relies almost entirely on formulaic recitations of the elements of a *Monell* claim and naked assertions of Defendants' liability. *See Iqbal*, 556 U.S. at 678. Where Plaintiff attempts to establish liability based on an "unwritten policy" of ignoring instances when deputies had sexual relationships with victims of crimes, she must provide greater detail than opaque references to previous instances of misconduct by Detective Kaplan and other MCSO deputies. Because the Complaint does not provide such detail, Plaintiff has failed to plausibly state a claim under *Monell* and Count 2 is dismissed.

### C. Punitive Damages

Defendants argue that any claim Plaintiff makes for punitive damages against them should be dismissed. (*See* MTD at 9–10.) Plaintiff responds that while she agrees punitive damages are not available against Defendants on her state law claims, they are still

available for her federal claim, citing 42 U.S.C. § 1988. (*See* Resp. at 9–10.)

The Court agrees with Defendants. Under Arizona law,[7] "neither a public entity nor a public employee acting within the scope of his employment is liable for punitive or exemplary damages." A.R.S. § 12-820.04. Similarly, under federal law, punitive damages are not recoverable in § 1983 claims against a municipality or an official sued in his official capacity.[8] *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[W]e hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983."); *Olivier v. Baca*, 913 F.3d 852, 861 (9th Cir. 2019) (affirming district court's denial of punitive damages against official sued in his official capacity in a § 1983 claim (citing *Mitchell v. Dupnik*, 75 F.3d 517, 527 (9th Cir. 1996))). Therefore, the Court grants Defendants' Motion with respect to Plaintiff's claim for punitive damages against the County and Sheriff Penzone in his official capacity. *See Kanelos v. Cnty. of Mohave*, Nos. CV-10-8099-PCT-GMS, CV-10-8149-PCT-GMS, 2011 WL 587203, at *6 (D. Ariz. Feb. 9, 2011) (granting judgment on the pleadings on similar request).

### D.  Leave to Amend

Defendants argue that Plaintiff should not be permitted leave to amend her Complaint, with the apparent exception of substituting Sheriff Penzone on her state law claims,[9] because any attempt to do so would be futile. (MTD at 10–11.) The Court agrees in part.

As discussed above, under Arizona law, the County cannot be held liable under *respondeat superior* for the torts of the Sheriff or his deputies, and under both Arizona and

---

[7] The Court notes that although Defendants challenge whether Plaintiff may seek punitive damages against them on her state law claims, there is nothing in the Complaint that suggests she is seeking such damages. (*See* Compl. ¶¶ 121–134.) Instead, punitive damages are only requested on Plaintiff's federal claims. (*See id.* ¶¶ 106, 119.)

[8] Punitive damages are recoverable against officials sued in their individual capacities "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Only Defendant Kaplan is sued in his individual capacity, and the Court expresses no opinion on Plaintiff's claim for punitive damages against him. (*See* Compl.)

[9] Despite their sweeping request to deny Plaintiff leave to amend, Defendants do not actually oppose Plaintiff's request to substitute Sheriff Penzone for the County on Plaintiff's state law claims. (*See* Reply.) As such, Plaintiff is permitted leave to amend her state law claims to allege liability against Sheriff Penzone.

federal law, punitive damages are not permitted against these Defendants on any of Plaintiff's claims. *See Fridena*, 504 P.2d at 61; *Mitchell*, 75 F.3d at 527; A.R.S. § 12-820.04. Any attempt to amend the Complaint to cure these defects would therefore be futile. *See Kroessler*, 977 F.3d at 815. However, regarding Plaintiff's *Monell* claim, Defendants merely argue that because Plaintiff has thus far failed to present sufficient facts, leave to amend "would undoubtedly result [in] a complaint lacking in the detail needed to support a *Monell* claim as no such policies, procedure, or customs, written or otherwise, exist." (MTD at 10–11.) Notwithstanding Defendants' general denial, Defendants have presented no reason for the Court to deny Plaintiff leave to amend her Complaint, especially at this early stage of the litigation. The Court consequently grants Plaintiff leave to amend her Complaint in light of the "extreme liberality" with which it is to be granted, and the possibility that she could present further facts supporting her claims. *See Eminence Cap., LLC*, 316 F.3d at 1051.

## IV. CONCLUSION

Based on the foregoing analysis, Defendants' Motion is granted in part, but Plaintiff is granted leave to amend her Complaint as outlined in this Order.

**IT IS ORDERED** granting in part and denying in part Defendants Maricopa County and Paul Penzone's Motion to Dismiss (Doc. 4). Counts 3 and 5 are dismissed against Maricopa County, Count 2 is dismissed against Maricopa County and Paul Penzone, and Plaintiff's claim for punitive damages against Maricopa County and Paul Penzone is dismissed.

**IT IS FURTHER ORDERED** granting Plaintiff leave to amend her Complaint as stated in this Order. Plaintiff shall have 21 days from the date of this Order to file her First Amended Complaint.

. . .

. . .

. . .

. . .

**IT IS FURTHER ORDERED** that the Rule 16 hearing will be reset by separate Order.

Dated this 21st day of December, 2021.

_____
Susan R. Bolton
United States District Judge